No. 47,517

CHARLES E. FANCHER and VIRGINIA D. FANCHER, *Appellees*, v. CARSON-CAMPBELL, INC., MARYSVILLE MUTUAL INSURANCE COMPANY and FARMERS AND MERCHANTS STATE BANK, *Appellants*.

(530 P. 2d 1225)

Opinion filed January 25, 1975.

*Raymond L. Dahlberg,* of Turner, Chartered, of Great Bend, argued the cause and was on the brief for the appellant, Marysville Mutual Insurance Company.

*Gerald W. Scott,* of Blair, Matlack, Rogg, Foote & Scott, P. A., of Wichita, argued the cause and was on the brief for the appellees.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from an order of the trial court granting summary judgment in favor of the appellees, Charles and Virginia Fancher, and against the appellant, Marysville Mutual Insurance Company (Marysville), for fire damage to insured premises. The premises were insured by Marysville and were the subject of a conditional sales contract in which the Fanchers were sellers, and Okla and Virginia Watts were purchasers. We are concerned with the right of the Fanchers to recover under a standard or union mortgage clause included in a policy of insurance which did not name them as the insured, but did name an escrow agent, Farmers and Merchants State Bank, of Derby, Kansas, as the "mortgagee [or trustee]."

On June 23, 1972, the Fanchers entered into an escrow contract with the Watts to convey to them a certain duplex located in the city of Wichita, Kansas, for the principal sum of $4,500. By the terms of the contract, $4,300 of the purchase price was to be paid by the Watts in equal monthly installments over a period of seven years, with interest on the unpaid balance at seven percent per annum. In addition, the Watts agreed to keep the premises insured at all times against loss by fire and other hazards for at least the unpaid balance of the purchase price. The insurance was to be written in a company acceptable to the appellees, with a purchaser-under-contract clause to the Watts, the proceeds to be payable to the parties as their interest may appear. A provision was included in the purchase contract requiring the sellers to execute a general warranty deed and place it in escrow with the Farmers and Merchants State Bank (Bank), which was to act as escrow agent for the parties.

On October 16, 1972, Okla Watts obtained a policy of fire insurance from Marysville covering the conveyed premises. The amount of coverage was $10,000 and the policy contained a standard mortgage clause naming the Bank as the "mortgagee [or trustee]."

On October 28, 1972, the property in question was completely destroyed by fire, and Okla Watts filed a claim seeking the proceeds of insurance under the policy. Marysville denied the claim of Watts. Subsequently, the Bank, on behalf of the Fanchers, made demand for the principal amount plus interest under the provisions of the standard mortgage clause contained in the policy. Marys-

ville likewise denied any obligation to make payments to the Fanchers, claiming the Bank was the mortgage interest holder under the terms of the policy and that the insurance company had no knowledge of the Fanchers or of the existence of their interest. Marysville refused to pay the fire loss, either to the Bank or to the Fanchers.

Consequently, the Fanchers brought an action in the district court against Marysville, its agent Carson-Campbell, Inc., and the Bank, claiming the Fanchers were third party beneficiaries under the insurance policy's standard mortgage clause, and as such were entitled to the balance due on the escrow contract.

In its answer Marysville denied that the Fanchers had any rights under the provisions of the standard mortgage clause and, as an affirmative defense, alleged the contract of insurance had been rescinded and the premium returned to Okla Watts on the basis of the applicant's misrepresentation of material facts contained in the application for insurance.

After the parties filed interrogatories and requests for admissions, the Fanchers moved for summary judgment on the ground the insurance policy contained a standard mortgage clause in favor of the Bank, under which they were entitled to judgment as a matter of law. After hearing argument on the matter, the court granted the motion for summary judgment and awarded the Fanchers $4,446.27, plus attorney fees.

On appeal, Marysville contends the Fanchers were conditional vendors and not mortgagees, and as such they had no right to the proceeds of insurance payable under the standard mortgage clause. In support of this view Marysville reasons that under the express terms of the standard mortgage clause the insurance company is contracting to insure the interest of a mortgagee and not the divergent interest of a conditional vendor. Marysville also contends that if the Fanchers were permitted to recover the company would be required to assume a risk which it has never had an opportunity to investigate, which it has never had a chance to evaluate, and which it has never had the option of accepting or rejecting.

Marysville further argues the Fanchers have no right to the proceeds from the insurance policy in question in that the policy expressly provides under the standard mortgage clause that the entire clause is void unless the name of the mortgagee or trustee is inserted on the first page of the policy. As the Fanchers were nowhere

named in the policy it is Marysville's contention that they are not entitled to the benefits and protection accorded by the standard mortgage clause.

The thrust of the Fanchers' argument on the motion for summary judgment, as well as on appeal, was that the Bank was a "trustee" of the Fanchers, both in the escrow transaction and in the collection of the insurance proceeds. The Fanchers contend that as third party beneficiaries of the Bank's trust position, they were entitled to bring an action on the independent contract of insurance created by the standard mortgage clause.

The standard mortgage clause contained in the insurance policy issued by Marysville to Okla Watts provided in part as follows:

"Loss or damage, if any, under this policy, shall be payable to

Farmers and Merchants State Bank

609 North Derby

Derby, Kansas 67037

mortgagee [or trustee] as interest may appear, and this insurance, as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee [or trustee] shall, on demand, pay the same."

In addition, the policy included a provision voiding the entire standard mortgage clause unless the name of the mortgagee or trustee was inserted on the front page of the policy in the space provided therefor.

The standard or union mortgage clause has been analyzed by this court on several occasions. We have been consistent in holding that such a clause creates a new and independent contract which entitles the mortgagee to recover under the policy of insurance, notwithstanding the effect of any act or neglect on the part of the owner or mortgagor of the property. (*Insurance Co. v. Coverdale,* 48 Kan. 446, 29 Pac. 682; *Stamey v. Assurance Co.,* 93 Kan. 707, 150 Pac. 227.)

It should be noted that although the Fanchers were not named in the standard mortgage clause it was their interest for which protection was sought. While it is true, technically speaking, the Fanchers held no mortgage on the insured property, there can be

no doubt that as conditional vendors they had an insurable interest in the property sufficient to support a contract of insurance.

The original conveyance of the property from the Fanchers to the Watts was in the form of a conditional sale. Under the terms of the escrow contract a general warranty deed was to be deposited with the escrow agent, but not delivered to the buyers until full payment was made under the provisions of the purchase contract. Such a method of selling real estate has been a common practice in this state for many years and has been recognized by this court on numerous occasions. (*Yost v. Guinn,* 106 Kan. 465, 188 Pac. 427; *Stevens v. McDowell,* 151 Kan. 316, 98 P. 2d 410.)

When this court has considered the effect of selling land by a conditional sales contract, we have likened the transaction to that of a mortgage. In *Yost v. Guinn,* supra, we stated the general rule to be that where land is sold in part upon credit, under a contract that the deed is to be made upon completion of payment of the agreed price at a fixed time, the relationship of the parties is substantially that of mortgagor and mortgagee.

Support for this view can be found in 5 Williston on Contracts, § 792, [3d Ed. 1961], wherein the author states:

"Where as generally happens the buyer is given possession of the land the case might well be, and, indeed, should be, distinguished from an ordinary executory contract to buy and sell. Even in the case of personal property where there is no right to specific performance, much authority recognizes that the buyer in possession under a conditional sale is the beneficial owner, and the seller in substance a mortgagee. If this is true of personal property, it is still more clearly true of real property.

"The relation of a vendor and purchaser of realty even under a wholly executory contract has been likened to the relation of mortgagor and mortgagee. This seems inaccurate, but where the purchaser is given immediate possession and beneficial enjoyment of the land, the analogy seems a sound one. If so, the situation should be dealt with in the same way as a mortgage situation is dealt with. . . ." (pp. 773, 774.)

Even if the Fanchers are accorded the status of mortgagees, Marysville contends they could not recover in this action unless they were named in the policy. The Fanchers argue that the Bank was a trustee; that they were beneficiaries of the trust; and that since the trustee was named in the policy it was not necessary to name the beneficiary. If the policy can be so construed the Fanchers should recover. The test to be applied in determining the intention of the parties to an insurance policy is not what the insurer intended the policy to mean, but what a reasonable person in the position of the insured would understand it to mean. Since an

insurer prepares its own contracts, it has a duty to make the meaning clear, and if it fails to do so, the insurer and not the insured must suffer. Thus, if the terms of an insurance policy are ambiguous or susceptible of more than one meaning, the meaning most favorable to the insured must prevail. (*Lavin v. State Farm Mutual Automobile Ins. Co.*, 193 Kan. 22, 391 P. 2d 992; *Fowler v. United Equitable Ins. Co.*, 200 Kan. 632, 438 P. 2d 46; *Blue v. Aetna Life Ins. Co.*, 208 Kan. 937, 494 P. 2d 1145.)

Marysville argues that the meaning of the term "trustee" as used in the standard mortgage clause was intended to be the equivalent of "mortgagee." In support of the position that the terms mortgagee and trustee are equivalent, Marysville cites two Pennsylvania cases which state the word "trustee," when used in a standard mortgage clause, refers to the trustee under a deed of trust similar to and of the nature of a mortgage. (*Clarke & Cohen, Appels., v. Real To Use*, 105 Pa. Super. 102, 159 A. 454; *Gen. Elec. Cr. C. v. Aetna Cas. & Surety Co.*, 437 Pa. 463, 263 A. 2d 448.)

We can readily see that in states such as Pennsylvania where trust deeds are authorized, such a construction of the standard mortgage clause is justified. In Kansas, however, where trust deeds are not recognized, we cannot say such a clause has the same meaning as it has in Pennsylvania, nor can we say the use of the word "trustee" has no significance.

We conclude the application of the words "mortgagee [or trustee]" to the interest held by the seller in the subject matter of a conditional sales contract creates an ambiguity. In these circumstances the meaning most favorable to the insured must prevail. The duties and functions of the Bank are sufficiently similar to that of a trustee that a person in the position of the seller could reasonably understand the policy to mean the Bank was acting as a trustee. It was stated in *Nickell v. Reser*, 143 Kan. 831, 57 P. 2d 101, that an escrow agent is not an agent at all but is sometimes referred to as the trustee of an express trust. We further conclude the Farmers and Merchants State Bank was designated in this policy as trustee for the Fanchers and they are entitled to recover the stipulated escrow balance as beneficiaries of the trust.

The judgment is affirmed, including the allowance for attorney fees made by the trial court. Application has been made for attorney fees for legal services in this appeal and by separate order the application has been allowed.